USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/19/12

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
MASTR ASSET BACKED SECURITIES       :
TRUST 2007-WMC1, by U.S. BANK       :
NATIONAL ASSOCIATION, Trustee,      :
                                    :
                    Plaintiffs,     :
                                    :
       - against -                  :    12 Civ. 3575 (VM)
                                    :
WMC MORTGAGE LLC,                   :    **DECISION AND ORDER**
                                    :
                    Defendant.      :
------------------------------------X

**VICTOR MARRERO, United States District Judge.**

By letter dated June 14, 2012 (Docket No. 9), defendant WMC Mortgage LLC ("WMC") requested a pre-motion conference to discuss transferring this action to the United States District Court for the District of Minnesota. By letter dated June 15, 2012 (Docket No. 8), U.S. Bank National Association (the "Trustee"), in its capacity as trustee for plaintiff MASTR Asset Backed Securities Trust 2007-WMC1 (the "Trust"), opposed WMC's request. On June 25, 2012, the Court held a telephone conference during which the parties presented their arguments regarding the issue of transfer.

The Court deems WMC's June 14, 2012 letter a motion to transfer pursuant to 28 U.S.C. § 1404(a). Upon consideration of the parties' submissions and arguments, the Court GRANTS WMC's motion to transfer this action to the District of Minnesota.

## I.   BACKGROUND

The Trust is a mortgage-backed securities trust. WMC, a mortgage-originator, sold mortgage loans to UBS Real Estate Securities, Inc. ("UBS") according to the terms of a purchase

1

agreement ("Purchase Agreement"). UBS later assigned its rights under the Purchase Agreement to Mortgage Asset Securitization Transaction, Inc. ("MASTR"), which deposited the mortgage loans into the Trust for securitization. The Trustee alleges that WMC breached representations and warranties it made when it sold the loans to UBS, and seeks to compel WMC to repurchase the loans. According to the Trustee, WMC has breached its obligations by failing to repurchase the loans following notification.

On September 2, 2011, approximately eight months prior to filing suit in this District, the Trustee sued WMC and another entity[1] in the District of Minnesota for claims arising from another mortgage-backed securities trust comprised of loans sold to UBS. See MASTR Asset Backed Sec. Trust 2006-HE3 v. WMC Mortg. Corp., No. 11 Civ. 2542 (D. Minn.) (the "Minnesota Action"). There, as here, the Trustee seeks to compel WMC to repurchase the loans.

In a Memorandum and Order dated February 16, 2012 (the "Minnesota Order"), Judge Paul A. Magnuson, presiding over the Minnesota Action, ruled that the operative contract governing the Trustee's claims is the original purchase agreement between UBS and WMC, rather than the pooling and servicing agreements. See MASTR Asset Backed Sec. Trust 2006-HE3 v. WMC Mortg. Corp., No. 11 Civ. 2542, 2012 WL 539374, at *2 (D. Minn. Feb. 16, 2012) ("The relevant agreements for the purposes of this case are the purchase agreements between UBS and each Defendant.") Judge

---

[1] The claims against the other entity, Equifirst Corporation, were later dismissed.

2

Magnuson dismissed claims relating to loans for which the Trustee had not yet notified WMC because they were not ripe. The Minnesota Order also dismissed a claim for monetary damages, holding that "under the clear terms of the parties' agreement, the sole remedy available to U.S. Bank is to seek cure, repurchase or substitution of the allegedly defective WMC mortgages." Id. at *3.

The Trustee filed the instant action on May 4, 2012. WMC, in turn, filed three declaratory judgment actions against the Trustee in the District of Minnesota. See WMC Mortg., LLC v. MASTR Asset Backed Sec. Trust 2006-WMC3, No. 12 Civ. 1370 (D. Minn.); WMC Mortg., LLC v. MASTR Asset Backed Sec. Trust 2006-WMC2, No. 12 Civ. 1371 (D. Minn.); WMC Mortg., LLC v. MASTR Asset Backed Sec. Trust 2006-WMC1, No. 12 Civ. 1372 (D. Minn.). WMC's three declaratory actions and the Minnesota Action are currently proceeding before Judge John R. Tunheim in the District of Minnesota.

## II. DISCUSSION

### A. LEGAL STANDARD

"For the convenience of the parties and witnesses, in the interest of justice" a court may transfer a civil action to any district where the action "might have been brought." 28 U.S.C. § 1404(a). The initial inquiry in deciding a § 1404(a) motion to transfer is "whether the case could have been brought in the proposed transferee district." Herbert Ltd. P'ship v. Elec. Arts Inc., 325 F. Supp. 2d 282, 285 (S.D.N.Y. 2004).

3

After that threshold determination has been made, courts consider the following factors in deciding whether a transfer is warranted: (1) the convenience of the witnesses and the availability of process to compel the attendance of unwilling witnesses; (2) the convenience of the parties; (3) the location of relevant documents and the relative ease of access to sources of proof; (4) the locus of operative facts; (5) the relative means of the parties; (6) the comparative familiarity of each district with the governing law; (7) the weight accorded to the plaintiff's choice of forum; and (8) judicial economy and the interests of justice. See id.

"The burden of demonstrating the desirability of transfer lies with the moving party, and in considering the motion for transfer, a court should not disturb a plaintiff's choice of forum unless the defendants make a clear and convincing showing that the balance of convenience favors defendants' choice." CAVU Releasing, LLC v. Fries, 419 F. Supp. 2d 388, 394 (S.D.N.Y. 2005) (citation and internal quotation marks omitted).

B.   PROPER TRANSFEREE FORUM

The Trustee does not dispute that this action could have been brought in the District of Minnesota. This proposition is supported by the fact that the Minnesota Action currently pending in that district involves the same parties and claims. In the Minnesota Action, the Trustee asserted that venue was proper pursuant to 28 U.S.C. § 1391 because WMC was subject to personal jurisdiction there. WMC submitted to litigation in the District

4

of Minnesota and has not disputed venue. The Court therefore finds that this action could have been properly brought in the transferee forum.

C.  TRANSFER FACTORS

Many of the traditional factors used to evaluate motions to transfer are irrelevant or neutral in this case. Only three – convenience of the witnesses and availability of process to compel the attendance of unwilling witnesses, the familiarity of this Court with New York contract law, and judicial economy and the interests of justice – are relevant here. Ultimately, the existence of the Minnesota Action weighs heavily in support of transfer.

1.  Convenience of Witnesses and Availability of Process to Compel Attendance of Unwilling Witnesses

"The convenience of witnesses is typically the most important factor when considering a motion to transfer." Eres N.V. v. Citgo Asphalt Ref. Co., 605 F. Supp. 2d 473, 480 (S.D.N.Y. 2009) (citing Herbert, 325 F. Supp. 2d at 286). "Generally, the convenience of non-party witnesses is accorded more weight than that of party witnesses." AIG Fin. Prods. Corp. v. Public Util. Dist. No. 1 of Snohomish Cnty., 675 F. Supp. 2d 354, 369 (S.D.N.Y. 2009) (citation and internal quotation marks omitted).

The Trustee states that it intends to interview or depose former employees of WMC's Orangeburg, New York office who have knowledge of WMC's lending practices. WMC, in turn, has not

5

identified any third-party witnesses in Minnesota with knowledge pertinent to this case.

The convenience of the witnesses weighs in favor of New York as a forum — but only slightly. Although there might be former employees of WMC with relevant knowledge, it is unclear whether they still reside in New York. It is also unclear at this stage whether those witnesses would have to travel for the purposes of this case — especially if a deposition may be obtained rather than live testimony. Nor has either party identified any potential non-party witnesses who would be unwilling to testify absent a subpoena. See Eres, 605 F. Supp. 2d at 482 (finding that availability of process to compel attendance does not weigh in favor of transfer when no witness indicated unwillingness to testify). Thus, there is no particularly compelling reason to favor Minnesota over New York, or vice versa. Since WMC bears the burden of demonstrating the desirability of transfer, and because the Trustee is the only party to indicate the location of potential witnesses, these factors weigh slightly in favor of New York.

    2.    <u>Convenience and Relative Means of the Parties</u>

The parties have not advanced any arguments regarding the convenience of either forum or the parties' relative means. Moreover, each party has filed suit against the other in the District of Minnesota and the Southern District of New York, and therefore both forums may be presumed to be convenient.

6

Accordingly, these factors are neutral and have no bearing on the transfer motion.

    3.    <u>Location of Relevant Documents and Relative Ease of Access to Sources of Proof</u>

"The location of relevant documents is largely a neutral factor in today's world of faxing, scanning, and emailing documents." <u>Am. S.S. Owners Mut. Prot. & Indemn. Association v. Lafarge N. Am., Inc.</u>, 474 F. Supp. 2d 474, 484 (S.D.N.Y. 2007). Although WMC indicates that its documents are located in California, and at least some of the Trustee's documents reside in Minnesota, neither party has represented that the location of documents poses some special difficulty, or that the ordinary process of document scanning and review would not apply in this case. The Court therefore finds that this is a neutral factor favoring neither forum.

    4.    <u>Locus of Operative Facts</u>

"In determining the locus of operative facts, courts look to the site of the events from which the claim arises. <u>AIG</u>, 675 F. Supp. 2d at 370 (quoting <u>Oubre v. Clinical Supplies Mgmt.</u>, No. 05 Civ. 2062, 2005 WL 3077654, at *4 (S.D.N.Y. Nov. 17, 2005)). "The locus of operative facts in a breach of contract case looks at where the contract was negotiated or executed, where it was to be performed, and where the alleged breach occurred." <u>Fteja v. Facebook, Inc.</u>, No. 11 Civ. 0918, 2012 WL 183896, at *13 (S.D.N.Y. Jan. 24, 2012) (internal quotation marks and citations omitted).

7

There does not appear to be a "locus of operative facts" pertinent to this case. Although the contracts at issue were executed in New York under New York law, the parties do not dispute their validity, and so the locus of execution is irrelevant. The breach alleged is a failure to repurchase, but it is impossible to pin down a location where that breach occurred. These are complex contracts governing financial matters national in scope. The Court therefore finds this factor unimportant in determining whether to transfer.

    5.    <u>Comparative Familiarity of Each District with the Governing Law</u>

"Familiarity with the governing law as a factor in determining transfer of venue is 'generally given little weight in federal courts . . . .'" Am. Eagle Outfitters, Inc. v. Tala Bros. Corp., 457 F. Supp. 2d 474, 479 (S.D.N.Y. 2006) (quoting NBA Props. V. Salvino, Inc., No. 99 Civ. 11799, 2000 WL 323257, at *3 (S.D.N.Y. Mar. 27, 2000)). "However, while 'federal courts in other states are capable of construing New York law, especially in a straightforward contract question, the forum's familiarity with the governing law may be a factor even in contract cases.'" AIG, 675 F. Supp. 2d at 372 (quoting Lafarge, 474 F. Supp. 2d at 486); cf. JVC Prof'l Prods. Co. v. HT Elec., Inc., No. 99 Civ. 3425, 1999 WL 1080280 (S.D.N.Y. Dec. 1, 1999) (finding that federal court in New York is presumed to have greater familiarity with New York law than federal court in California).

8

The parties agree that New York law governs the operative contracts. However, this Court does not doubt that the District of Minnesota is perfectly capable of applying, and routinely does apply, straightforward New York contract law. See, e.g., Schmidt Printing, Inc. v. Pitney Bowes, Inc., No. 10 Civ. 1083, 2011 WL 5967308, at *2-*3 (D. Minn. Nov. 29, 2011) (applying New York contract law); JAZME, LLC v. Wendt Corp., 809 F. Supp. 2d 957, 964 (D. Minn. 2011) (same). Therefore, this factor only slightly weighs against transfer.

6. Weight Accorded to Plaintiff's Choice of Forum

"The Second Circuit has consistently held that a plaintiff's choice of forum is presumptively entitled to substantial deference. However, that deference is reduced where, as here, the plaintiff's choice of forum is not its principal place of business." AIG, 675 F. Supp. 2d at 368 (internal quotation marks and citations omitted).

Here, there are several considerations which undercut the deference usually accorded to the plaintiff's choice of forum. The Trustee's principal place of business is Minnesota, where it filed a related action against WMC prior to filing this suit. Cf. Raniere v. Citigroup, Inc., 827 F. Supp. 2d 294, 300 (S.D.N.Y. 2011) ("As a general rule, 'where there are two competing lawsuits, the first suit should have priority.'") (quoting First City Nat'l Bank & Trust Co. v. Simmons, 878 F.2d 76, 79 (2d Cir. 1989)). While the Minnesota Action and this suit are not identical — they involve different trusts — nevertheless,

9

the Trustee's decision to file a closely related suit against WMC in the District of Minnesota several months before filing this suit weighs in favor of transfer to Minnesota. It would be fundamentally unfair to grant the Trustee deference when that treatment would entail forcing WMC to defend itself against substantially related claims in two different forums chosen by the Trustee, which had the option of litigating all the claims at issue in a single convenient forum but elected not to do so. Therefore, the Court declines to grant the Trustee deference and finds that this factor is neutral.

    7.    Judicial Economy and the Interests of Justice

WMC's primary argument is that transferring to the District of Minnesota will conserve judicial resources and promote consistency and uniformity. Many courts have recognized that transfer is appropriate when "two cases involving the same issues are simultaneously pending in different district courts." Barnet v. Elan Corp., 236 F.R.D. 158, 164 (S.D.N.Y. 2005) (citing Continental Grain Co. v. Barge-FBL-585, 354 U.S. 19, 26 (1960)); see, e.g., AIG, 675 F. Supp. 2d at 372-73 (granting transfer to district with related case involving same parties, agreements, facts and circumstances); Eres, 605 F. Supp. 2d at 483 ("[A] transfer would allow one court to perform a full analysis of the documents and the circumstances surrounding their execution, and that court can then render one ruling interpreting all of the contracts in their entirety.") (granting transfer to district where related case was pending and both cases involved

10

interpretation of same contracts). "[T]he benefits for consolidating related cases in a common forum are often substantial. Such consolidation may advance the strong policy interests of achieving efficient pretrial discovery, avoiding duplicative litigation, and avoiding inconsistent results." Am. S.S. Owners Mut. Prot. & Indemn. Association v. American Boat Co., No. 11 Civ. 6804, 2012 WL 1382278, at *3 (S.D.N.Y. Apr. 20, 2012) (denying transfer motion where court determined there would be limited practical benefits to consolidating related cases).

Although the complaints in this action and the Minnesota Action are not identical, the two cases are clearly related because they involve the same parties, the same or very similar contracts, the same primary claim (repurchase), and nearly identical fact patterns. The only substantive difference between the two suits is the underlying package of mortgage loans.

The Minnesota Action has already decided substantive issues. The Minnesota Order held that the Purchase Agreement governs the repurchase claim in that case, and interpreted the notice and remedies provisions therein. WMC argues that the Trustee's failure to comply with the "prompt" notice requirement of the Purchase Agreement entitles WMC to summary judgment on 80 of the 99 loans in dispute in that suit, and the parties have fully briefed the issue. According to WMC, the same Purchase Agreement governs this action as well.

Given the significant overlap of parties, facts, and issues between the Minnesota Action and this suit, judicial economy and

11

the interests of justice weigh heavily in favor of transfer. It would be a waste of resources – for both the parties and the judiciary – to have the same issues litigated in two separate courts, forcing the defendant to litigate in separate forums, especially where the same plaintiff commences related actions in different jurisdictions without sufficiently compelling reasons why it could not have proceeded in the same court. In general, it is more efficient to have one court interpret the same contracts, rather than multiple courts potentially arriving at inconsistent results. Although the judge that issued the Minnesota Order is no longer presiding over that case, the Minnesota Action and WMC's declaratory judgment actions have been assigned to the same judge, and have progressed much further than the instant action, which has yet to dispose of any substantive issues. Transferring this case to the District of Minnesota and consolidating the cases there would promote efficient pretrial discovery and disposition of issues, such as whether the Trustee met notice requirements.

D.   BALANCING TEST RESULTS

In sum, the balance of the factors favors transfer of this action. Although two of the factors — the convenience of some witnesses and the familiarity of this Court with New York contract law — potentially weigh slightly against transfer, the Court is not persuaded that these considerations outweigh the substantial benefits to the interests of justice and judicial economy which will accrue by transferring and consolidating the

12

case. Therefore, the Court rules that this action should be transferred to the District of Minnesota for consolidation with the Minnesota Action, No. 11 Civ. 3542.

### III. ORDER

For the reasons discussed above, it is hereby

**ORDERED** that the motion of defendant WMC Mortgage, LLC to transfer this action to the United States District Court for District of Minnesota is GRANTED.

The Clerk of Court is directed to terminate any pending motions and to close this case.

**SO ORDERED.**

Dated:   New York, New York
         19 July 2012

                                             _____
                                                   VICTOR MARRERO
                                                      U.S.D.J.